UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., | |
| Plaintiff(s), | No. C05-4658 BZ |
| v. | **REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR ENTRY DEFAULT JUDGMENT** |
| SHABBY INC., et al., | |
| Defendant(s). | |

Plaintiffs have applied for entry of default judgment against defendants Shabby Inc. ("Shabby"), doing business as Bourbon Street Bar and Grill ("Bourbon Street"), and David R. Bentley.  Defendants have not appeared in this action and did not otherwise respond to plaintiffs' application.  As defendants have not consented to magistrate judge jurisdiction, the following is a report and recommendation for entry of default judgment.

Plaintiff Broadcast Music, Inc. ("BMI") is a "performing rights society" which has been granted the right to license the public performance rights of copyrighted musical compositions, including 19 copyrighted songs that are the

1

subject of this action (the "Copyrighted Music"), on behalf of the copyright owners. The other plaintiffs are the copyright owners of the Copyrighted Music. Judith Saffer, the Assistant General Counsel of BMI, has submitted a declaration in support of plaintiffs' motion for default judgment, in which she describes BMI's business. BMI grants to music users the right to publicly perform the Copyrighted Music through blanket license agreements. BMI is a non-profit organization, returning the license fees its collects as royalties to independent composers and music publishers, after deducting its costs and reasonable reserves. Saffer Decl. ¶ 3. Through agreements with composers and publishers, BMI is also the copyright owners' attorney-in-fact and authorized to prosecute copyright infringement actions. Id. ¶ 6.

Bourbon Street was in the past a party to a licensing agreement with BMI, but by letter dated September 14, 2004, BMI cancelled the agreement because of non-payment of fees totaling $4,182.56. Stevens Decl., Exh. C. The letter advised defendants that "public performance of BMI copyright controlled music" would be without BMI's permission and "may subject [defendants] to substantial damages under the Federal Copyright Law." Id. BMI subsequently learned that Bourbon Street was still hosting public performances of the Copyrighted Music without a license or permission from the copyright owners. Stevens Decl. ¶ 4. BMI sent letters on October 4, 2004, October 18, 2004, March 22, 2005, March 30, 2005, May 6, 2005 and July 20, 2005, repeatedly advising that defendants needed to purchase a license from BMI or that they

2

should cease all use of the Copyrighted Music.  Defendants did not respond.  BMI also called Bourbon Street 14 times and spoke to persons associated with the establishment's operations.  Id. ¶ 9.  Despite these efforts, defendants failed to enter into a licensing agreement with BMI and continued to perform or allow the Copyrighted Music to be performed.  BMI hired Christopher K. Pisano to observe Bourbon Street on three different nights and write down the songs performed.  Mr. Pisano's certified infringement reports detail the cover prices charged and the songs performed.  Stevens Decl., Exh. B.  On November 24, 2004, Mr. Pisano observed six BMI-licensed songs being publicly performed; on January 15, 2005, he observed five songs; on February 17, 2005, he observed seven.[1]

On November 14, 2005, plaintiffs filed a complaint alleging federal copyright infringement based on defendants' unauthorized public performance of the Copyrighted Music.  See Compl. ¶ 10.  Plaintiffs allege that defendants publicly performed and/or caused the public performances of the Copyrighted Music without a license or permission despite repeated warnings that such performances constitute copyright infringement.  Id. ¶¶ 15-16.  Plaintiffs claim that they have suffered "great and incalculable damage."  Id. ¶ 17.

---

[1] Plaintiffs have attached to their complaint a schedule listing information for the allegedly infringed 19 copyrighted songs, including the writers, publishers, copyright registration numbers and dates of infringement for such songs.  The exhibit lists one copyrighted song with a date of infringement of February 18, 2005, but the record does not corroborate this.  The record includes Mr. Pisano's reports for only three nights, and February 18, 2005 is not one of them.

On November 21, 2005, plaintiffs effected service of process on defendant Bentley by leaving a copy of the summons and complaint for him at his dwelling or usual place of abode and subsequently mailing a copy.  Plaintiffs similarly effected service of process on defendant Shabby on December 7, 2005 by leaving a copy of the summons and complaint for the authorized agent at the business address and subsequently mailing a copy.  Defendants failed to answer the complaint or otherwise defend the action.  On February 6, 2006, upon plaintiffs' request, the Clerk of this court entered defendants' default under Rule 55(a).  Plaintiffs now seek a default judgment, consisting of a permanent injunction, $57,000 in statutory damages and $4,558.55 in attorneys' fees and costs.

Pursuant to Rule 55(b)(2), the court, in its discretion, may enter a default judgment against a party against whom default has been entered.  Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).  Through the declaration of Karen Frank, who bases her statements on personal knowledge, plaintiffs have shown that defendants are not infants or incompetent persons or in military service.

By their default, defendants are deemed to have admitted the well-pleaded averments of the complaint except those as to amount of damages.  See Fed. R. Civ. P. 8(d); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987)(stating that upon default, the factual allegations of the complaint will be taken as true); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).  Liability

4

having been established on default, the remaining issue on default judgment is the relief available to plaintiffs.  See Mitch Leigh, et al. v. Demetrius Sakkaris and Mary Sakkaris, 1982 WL 1262 at * 2 (N.D. Cal. Jan. 17, 1982)("The owner and operator of a place of public entertainment for profit is liable for permitting unlicensed use of musical compositions on his or her premises.").

Plaintiffs seek statutory damages in the sum of $57,000 under 17 U.S.C. § 504, which represents a total of $3,000 for each of defendants' 19 acts of alleged infringement.  An award of damages under 17 U.S.C. § 504 is within the discretion of the court.

Under 17 U.S.C. § 504, plaintiffs may recover between $750 and $30,000 per infringing work,[2] or in the case of willful infringement, up to $150,000.  17 U.S.C. § 504(c).  In determining an appropriate award of statutory damages, courts have considered factors such as:  (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."  Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2nd Cir. 1986).  See also Controversy Music v. Agonafer Shiferaw,

---

[2]  The court considers all the parts of a compilation or derivative work to constitute one work.  17 U.S.C. § 504(c)(1).

5

1  No. C-02-5254 (MJJ), 2003 WL 22048519 at *2 (N.D. Cal. Jul. 7,
2  2003)(listing as factors to be considered the expense saved by
3  the defendant, profits reaped by the defendant, revenues lost
4  to the plaintiff, willfulness of the infringement and the goal
5  of discouraging wrongful conduct).
6      Although the amount of damages is within the court's
7  discretion, the court must have a basis for its award.  See
8  Mirage Studios v. Yong, No. C-93-2684 (VRW), 1994 WL 184613 at
9  *2 (N.D. Cal. Apr. 22, 1994)(awarding the minimum statutory
10 damages for copyright infringement instead of the requested
11 $10,000 because "the court is constrained only by the 'maxima
12 and minima' provided in the statute and [plaintiff] has failed
13 to provide a factual basis for its statutory damages
14 request").  The statute does not provide guidelines in
15 determining an award that would be considered just, so the
16 court must consider certain factors to inform its discretion.
17     In this case, I find that plaintiffs are entitled to
18 statutory damages, but in an amount less than they requested.
19 Plaintiffs have provided the court with proof as to
20 defendants' willfulness.  Defendants' lack of response to
21 plaintiffs' efforts to communicate suggests knowledge and
22 notice of copyright infringement.  See Broadcast Music, Inc.
23 v. Colonial Foods, Inc., No. C-92-4253 (DLJ), 1993 WL 87808 at
24 * 2 (N.D. Cal. Mar. 17, 1993)("Where defendants have ignored
25 or disregarded notices of the need for licensing, willful
26 infringement has been found."); Broadcast Music, Inc. v.
27 DeGallo, Inc., 872 F.Supp. 167, 168 (D. N.J. 1995)(finding
28 willful infringement when plaintiffs sent "numerous letters to

6

defendants informing them that they were violating the copyrights in plaintiffs' songs"). In addition, the fact that Bourbon Street defaulted on an existing licensing agreement supports the conclusion that defendants knew they were infringing.

Mr. Pisano's reports show that defendants were able to charge covers ranging from $3.00 to $20.00, and it is likely that performances of the Copyrighted Music contributed to this. Furthermore, while defendants reaped the benefits of their infringement in profits, they saved the expense of paying BMI for a license to publicly perform the Copyrighted Music. Mr. Stevens, the Assistant Vice-President of General Licensing, estimates the licensing fees to be $1,180 for the period from October 1, 2004 through September 30, 2005 and $1,930 for the current year, from January 1, 2006 through December 31, 2006. Stevens Decl. ¶ 15. Conversely, plaintiffs lost the opportunity to earn this amount. Plaintiffs are entitled to statutory damages, but they do not explain or justify their requested amount of $3,000 per violation.

Courts in this context, where defendants infringed by providing a public venue for performers to play copyrighted musical works, focus on the lost licensing fees and apply a multiplier to discourage copyright infringement. The amount awarded should be sufficiently high so that defendants are punished and learn "'that it costs less to obey the copyright laws than to violate them.'" DeGallo, 872 F.Supp. at 169 (concluding that "in the narrow class of cases dealing with

willful, unauthorized, musical performances in public establishments, the damages awards range from two times the licensing fee to five times the licensing fee"). See also Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F.Supp. 656 (S.D.N.Y. 1996)(reducing requested damages amount in a similar copyright infringement action from $2,000 per song to $1,500 per song, which sum would be approximately five times the license fees plus plaintiffs' investigative expenses). Here, the lost licensing fees total $3,110 and applying a multiplier of five yields $15,550. At plaintiffs' request I have taken judicial notice of a stipulated judgment in a prior lawsuit in this court between plaintiffs and Shabby in which Shabby admitted infringing plaintiffs' copyrights [docket # 26]. In light of this history additional damages are necessary for deterrence purposes and I recommend awarding plaintiffs a total of $25,000 in statutory damages.

In addition to statutory damages, plaintiffs seek injunctive relief to prevent defendants from unlawfully performing, or causing to be performed, plaintiffs' Copyrighted Music. 17 U.S.C. § 502 provides for the issuance of an injunction to restrain the infringement of a copyright. Colonial Foods, 1993 WL 87808 at * 2. Injunctive relief is appropriate in cases involving default. See, e.g., Jackson v. Sturkie, 255 F.Supp.2d 1096, 1103 (N.D. Cal. 2003).

Plaintiffs' application establishes that, absent a permanent injunction, defendants might continue to infringe plaintiffs' works. Not only did defendants continue to infringe after receiving numerous letters, defendants' lack of

1  participation in this litigation has not given the court
2  sufficient assurance to believe that they will refrain from
3  future unauthorized use.  See Jackson, 255 F.Supp.2d at 1103
4  (finding that defaulting defendant's "past behavior and on-
5  going ability to infringe on plaintiff's copyright constitute
6  a continued threat of future infringing activity" sufficient
7  to warrant a permanent injunction).  I therefore recommend
8  enjoining defendants, their agents, servants, employees and
9  all persons acting under their permission and authority, and
10 restraining them from infringing, in any manner, plaintiffs'
11 Copyrighted Music.
12     Finally, plaintiffs seek reimbursement of their
13 attorneys' fees and costs incurred in the prosecution of this
14 action, under 17 U.S.C. § 505.  "[T]he court in its discretion
15 may allow the recovery of full costs by or against any party."
16 17 U.S.C. § 505.  See also Controversy Music, 2003 WL 22048519
17 at *3; Mirage Studios, 1994 WL 184613 at * 2.  Plaintiffs have
18 submitted the declaration of Karen Frank, which details the
19 time spent and hourly rates of the staff who have worked on
20 this case.  Plaintiffs' counsel spent 4.3 hours of her time,
21 at a rate of $375 per hour, and a paralegal spent 9.8 hours at
22 a rate of $175 per hour, researching, filing and serving the
23 complaint, obtaining entry of default and pursuing this motion
24 for default judgment.  Frank Decl. ¶¶ 7-8.  Plaintiffs have
25 adequately supported their fees and hourly rates.  Plaintiffs
26 request $1,231.05 in costs related to filing and service of
27 process.  Plaintiffs expended time and effort in pursuing this
28 copyright infringement action.  I find plaintiffs have

adequately documented their costs and established that their attorneys' fees were reasonable and necessary for plaintiffs to obtain a default judgment against elusive defendants. Therefore, I recommend awarding $4,558.55 in attorneys' fees and costs.

For the reasons outlined above, I recommend awarding plaintiffs $25,000 in statutory damages, granting an injunction against defendants and awarding plaintiffs $4,558.55 in attorneys' fees and costs.

Dated:   April 27, 2006

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\BROADCAST\DEFJUDG.ORD.2.wpd

10